Nash, J.
 

 The testimony sufficiently proves that the negro Henry, claimed by the plaintiffs to have been conveyed to them in the deed of’37, is the same Henry mentioned in that of ’24. Benjamin Kimball died in 1840, and this bill was filed in 1845.
 

 The principle, upon which the plaintiffs’ciaimrests, is, that by the deed of 1837, the slave Henry was conveyed to them, by the clause, “and all and every
 
 article
 
 of property, which I own, whether enumerated or mentioned» is herein conveyed That this deed, being voluntary, was void as to the creditors of Benjamin Kimball, but valid as to him, and those representing him: That therefore the surplus in the sheriff’s hands, and now in that of the defendant Avent, was their property, and received by him, as their trustee, and he is bound to account for it to them. The money would belong to them if, under the conveyance of 1837, the plaintiffs acquired any interest in Henry, which was subsisting at the time the defendant Avent received the money.
 
 Taylor
 
 v.
 
 Williams
 
 1 Ired. 249.
 
 Jones
 
 v.
 
 Thomas,
 
 4 Ired. 12. We are not prepared to say that, by that deed, the slave Henry was conveyed to the plaintiffs, or was intended to be. He is not named in the instrument, while a variety of the most minute and trifling articles are enumerated, as (among other things) “a parcel of
 
 old
 
 iron in the shop, an old horse, fine wheel boxes, two large white hogs, a barrow, and a sow of my mark, a spotted sow of my mark uses about where William Sawlin’s family lives, the two white hogs uses in the old-field in the bend of the creek above the mill, and are shy,” &c. Of the same character are the other articles enumerated. It is very difficult to conceive, why the only property of any value, intended to be conveyed, should be omitted, when the donor is so very careful in designating the other property, as to tell us, that two of the hogs were
 
 *51
 
 shy, and where they ranged. In addition to this, William Sturdivant, a witness for the plaintiff, tells us, that the conveyance was made twelve or eighteen months before Benjamin Kimball left the State, and that, some time after its execution, he asked him why he had not named Henry in that deed : he answered, because he had before given him to him, William Sturdivant, for his children. This is strong evidence, that although the words used in the deed
 
 might
 
 be sufficient to embrace Henry, yet that such was not the intention of the donor. There is no evidence of any gift to the plaintiffs prior to the deed of 1837, nor do they, in their bill, allege there was.
 

 If, however, it be conceded that under the deed of 1837, an interest in the slave Henry was conveyed to the plaintiffs, it becomes important to enquire its nature and extent.
 

 Benjamin Kimball was the original owner of the slave, and a wealthy man. Being about to enter into a second marriage, and desirous to advance his children, with the knowledge and consent of the lady, whom he was about to many, he divided among them a large portion of his estate both real and personal. To his son William D. Kimball he gave, by deed bearing date in February 1824, the portion of his property intended for him, including this slave Henry, but reserved to himself a life estate in him as well as all the rest of the property so conveyed, There can be no question that under the Act of 1823,
 
 Ch.
 
 1211, Rev.
 
 St. Ch.
 
 37,
 
 Sec.
 
 22, the limitation to the son, after a life estate to the father, is good- It is enacted “ that every limitation by deed or writing, of a slave, which limitation if contained in a last will and testament, would be good and effectual as an executory devise’ or bequest, shall be, and is hereby declared to be, a good and effectual limitation in remainder of such slave, and any limitation made or reserved to the grantor, vendor, or donor, in any such deed or writing, shall be good and effectual in law,” &o. If the gift we are consideringha'd
 
 *52
 
 been contained in a last will and testament, it would have been good, as an executory devise, and it is such gifts contained in a deed, the Act provides for. All legislative Acts, by the common law, refer back to the first day of the session, without any reference to the actual time when passed, unless otherwise directed. In this State, by statute, all Acts go into effect thirty days alter the rise of the session at which they are passed, unless expressly otherwise directed. 1799,
 
 Ch.
 
 527,
 
 Rev. St. Ch. 52, Sec.
 
 38. The Session of.the Legislature was closed on the 28th Dec. 1823, and the Act went into operation the 28th Jan. 18S4 ; and the deed from Benjamin Kimball to William D. Kimball, was executed the 9th day of Feb. 1824, after the Act of
 
 ’23
 
 had gone into operation, and that Act gives full operation to the deed and sustains the interest, both of the donor and donee. The life estate reserved to the donor was, then, a good reservation, and when he made the deed of ’37, under which the plaintiffs claim, if Henry was included, he conveyed to them, and could convey, no larger estate than he possessed, which was for his life. It is in evidence, that Benjamin Kimball retained the possession of Henry until a short time
 
 before
 
 bis removal, when, to avoid going with him, he ran away, but returned, and went into the possession of William Sturdivant, one of tbe plaintiffs, by agreement between him and Benjamin Kimball, and in whose possession he remained until Oct. 1839, when he was taken by the sheriff of Halifax and sold to satisfy an execution in his hands against Benjamin Kimball. William Sturdivant became the purchaser, at a price which paid off the execution and left a surplus of @482 35, for the payment of which, he gave his note to the sheriff. The money due upon this note was subsequently, to-wit between May and August 1844, received by the defendant, on an execution which issued for his benefit or that of the estate of Benjamin Kimball. The money did not belong to the plaintiffs, either in Law or in Equity, as they are volun
 
 *53
 
 leers under a deed subsequent to that to William D. Kimball, who may recover the money from the defendant. To the plaintiff, Benjamin Kimball could, legally, convey nothing but an interest for his life, an interest which ceased with his life, and at the time the defendant received the money, he had been dead nearly four years.
 

 The plaintiffs are not entitled to the relief they seek, and the bill must be dismissed with costs.
 

 Per Curiam.
 

 Decreed accordingly